OPINION
{¶ 1} Appellant, Patrick Fitzgerald, appeals his convictions on two counts of complicity to aggravated robbery, each carrying a firearm specification, and one count of having weapons while under disability.
 {¶ 2} On May 14, 2002, in Painesville, Ohio, L.C. Robinson and Michael Fitzgerald robbed two drug dealers at gun point. After acquiring a small sum of money and counterfeit cocaine, a green car picked up the robbers and sped north. The vehicle was driven by Eddie Baker and appellant was the front seat passenger.
 {¶ 3} At trial, the state offered the following evidence: Jeffrey Wright, Jr., a witness to the robbery, testified that he and his cousin, Robert Molnar, were walking down East Prospect Street, when he saw DeMario Walker, a friend, with his hands in the air. Wright Jr., observed two men with guns, one of which was directing his weapon at Walker. As Wright, Jr., resided nearby, the two men ran to his house; while fleeing, Wright, Jr., testified he saw the gunmen enter a green car. The robbers were both black males.
 {¶ 4} Molnar testified to essentially the same facts. He added that he tried to get the license plate number from the green car but was only able to see the first three letters, which he thought were C O P.
 {¶ 5} DeMario Walker, a victim of the robbery, testified that, on May 14, 2002, he met Noel Rios, the second victim, on East Prospect Street after Rios left school. As Walker and Rios were walking, Walker saw a car pull up to a nearby mini-mart. Two of the car's occupants approached Walker and Rios, brandished firearms and commenced the robbery. Walker stated that the robbers took $35 from his pants and took money from Rios as well. Walker then observed a green car coming down the street. Walker had previously observed the car circling the area. Two black males, a driver and a front seat passenger, opened the back door for the two robbers to get in. As they entered the vehicle, the robbers told Walker and Rios not to move. Ultimately, Walker provided a statement to police and identified the two robbers from a photo line-up.
 {¶ 6} The key prosecution witness was L.C. Robinson, one of the robbers. Robinson described how he had known appellant half of his life and grew up with him in East Cleveland. On May, 14, 2001, Robinson, appellant, Michael Fitzgerald, and Eddie Baker were together in Cleveland "smoking weed and drinking." The issue of obtaining some money was posed and the group determined that they would travel to Painesville, Ohio because it is a "lick city," i.e., an easy target to rob. Before driving to Painesville, the group obtained two, loaded firearms which were placed in the trunk of the car.
 {¶ 7} Robinson testified that he was unfamiliar with Painesville. However, appellant, who was described by Robinson as a "live-in," i.e., one who knows a particular area, knew Painesville and was able to show the group "spots" to rob. According to Robinson, after arriving in Painesville, the group traveled to East Prospect Street which they circled several times. On their first loop, the group noticed two young men. Appellant said that they looked "easy" and informed the group that the two men (Walker and Rios) were drug dealers.
 {¶ 8} Robinson detailed how the car was parked at a mini-mart and he and Michael Fitzgerald exited the vehicle and retrieved the firearms from the trunk while appellant and Baker remained as "look outs." Robinson specifically testified that both appellant and Baker saw the guns once Robinson and Michael Fitzgerald returned with them. According to Robinson, each person knew their respective job: Baker and appellant were to stand as "look outs" and "pick-up" men while Michael Fitzgerald and Robinson would actually commit the robbery.
 {¶ 9} Robinson and Michael Fitzgerald walked toward the two targeted men. Once they were close enough, the robbers brandished their weapons and robbed the victims. They retrieved a small sum of money and fake crack cocaine. Appellant and Baker pulled up in the car, the robbers entered, and the car drove off.
 {¶ 10} Once Robinson and Michael Fitzgerald were in the car, they drove toward the Argonne Arms apartment complex where they parked. Robinson testified that he and appellant exited the car but, after noticing a police cruiser, re-entered. Baker left the parking lot and the police cruiser followed. After tailing the group briefly, the officer activated his overhead lights and stopped the vehicle. Appellant jumped up as though he was going to run, which prompted Robinson to hand his gun to appellant.
 {¶ 11} Officer Eric Kacvinsky of the Painesville Police Department was the first officer on the scene. At trial, Officer Kacvinsky explained that he had received information of two black males waiving guns around on East Prospect Street and responded. The dispatcher indicated the men left in a green car. Upon arriving at Prospect Street, the officer saw no immediate disturbance and proceeded North, leading him to Argonne Arms. At Argonne Arms, the officer observed two black males getting into a smaller green car. The green car left the complex and started to pull over. The officer then activated his cruiser's lights. Before proceeding, Officer Kacvinsky waited for back-up assistance.
 {¶ 12} While waiting for back-up, the officer observed four black males in the car. Appellant opened his door, the right front passenger door, and exited the car. Officer Kacvinsky ordered appellant to return to the vehicle. Appellant complied. Once backup arrived, Officer Kacvinsky approached the vehicle from the passenger side. After advising the group as to the reasons for the stop he asked if anyone had any weapons. They occupants stated they had no weapons. However, the officer was startled by something in appellant's hands. Appellant was asked to step out of the car, apparently dropping the item in his hands, and Officer Kacvinsky observed a gun at appellant's feet. Appellant was placed in the officer's cruiser.
 {¶ 13} After removing all occupants of the vehicle, the officers on scene began to inventory the car. During the inventory, three bags containing fake crack cocaine were found along with another firearm on the rear floorboard of the car.
 {¶ 14} Mitchell Wisniewski, a fingerprint and firearms examiner for the Lake County Crime Lab conducted fingerprint analyses on the two weapons and five cartridges found in the vehicle. No latent prints were found on either weapon. Wisniewski testified, however, to the fact that firearms generally will not generate latent prints. However, Wisniewski confirmed that both weapons were operable firearms.
 {¶ 15} Appellant was indicted on June 28, 2002 on two counts of complicity to aggravated robbery, felonies of the first degree, each count had an accompanying firearm specification, and one count of having weapons under disability, a felony of the fifth degree. Appellant waived his right to be present at arraignment and the trial court entered a plea of not guilty on his behalf.
 {¶ 16} Appellant filed a motion to suppress evidence on October 8, 2002. After a hearing, the court denied appellants motion. The case proceeded to a jury trial. Near the close of the state's case-in-chief, the defense made a motion for a mistrial based upon the prosecutor's comment on appellant's post-arrest silence. The motion was denied.
 {¶ 17} The jury returned a guilty verdict on all counts and specifications. Appellant was sentenced to three years on each of the complicity to aggravated robbery charges, and six months on the having weapons while under disability charge, to be served concurrently. Appellant was further sentenced to a mandatory three years on the firearm specification, to be served prior to and consecutively to the sentence on the underlying convictions.
 {¶ 18} Appellant now appeals and raises the following assignments of error:
 {¶ 19} "[1.] The trial court erred to the prejudice of appellant when it failed to comply with Revised Code Section2923.03(D).
 {¶ 20} "[2.] The trial court erred to the prejudice of appellant when it denied appellant's motion for mistrial.
 {¶ 21} "[3.] Appellant's convictions are against the manifest weight of the evidence."
 {¶ 22} In his first assignment of error, appellant asserts that the trial court failed to comply with R.C. 2923.03(D) which addresses jury instructions delivered in criminal cases in which an alleged accomplice testifies. Appellant aptly notes that the instructions in question may not be omitted in circumstances where an accomplice testifies. Appellant maintains that the trial court deviated from this statutory mandate and therefore committed reversible error.
 {¶ 23} Notwithstanding the foregoing argument, the record reveals that appellant made no objections to the instructions of which he complains. Immediately subsequent to it's charge, the court directly addressed both the prosecution and the defense as to whether they had any objections, deletions, corrections, or additions to the instructions. Counsel for both sides responded in the negative.
 {¶ 24} An appellate court generally will not consider any error which was not brought to the attention of the trial court.State v. Joseph (1995), 73 Ohio St.3d 450, 455. Furthermore, Crim.R. 30(A) indicates that a party may not assign error with regard to jury instruction unless he objects accordingly at trial. Failure to object operates as a waiver of the issue on appeal. State v. Williford (1990), 49 Ohio St.3d 247, 251. As appellant leveled no objection to the jury instructions in question, he has effectively waived its review.
 {¶ 25} However, assuming arguendo that appellant properly preserved this issue for our consideration, we believe that the trial court met its obligation under R.C. 2923.03(D).
 {¶ 26} R.C. 2923.03(D) provides:
 {¶ 27} "If an alleged accomplice of the defendant testifies against the defendant in a case in which the defendant is charged with complicity in the commission of or an attempt to commit an offense, an attempt to commit an offense or an offense, the court, when it charges the jury shall state substantially the following:
 {¶ 28} "`The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution.
 {¶ 29} "`It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth.'"
 {¶ 30} According to the state's theory of the case, Robinson was an accomplice of appellant: Although Robinson was one of the direct participants in the robbery, appellant was the purported "mastermind" of the crime, i.e. appellant knew Painesville, directed the robbers to the best location, and selected the victims. Therefore, the statutory instructions were necessary. See, State v. Burkhammer (Jan. 11, 1991), 11th Dist. No. 89-L-14-096, 1991 Ohio App. LEXIS 81, at 9.
 {¶ 31} That said, R.C. 2923.03(D) explicitly permits substantial compliance with the accomplice testimony instruction. Thus, a trial court does not commit error if it does not literally comply with the statute. See, e.g., State v.Christian (Jan. 13, 2000), 7th Dist. No. 96-JE-42, 2000 Ohio App. LEXIS 303, at 12.
 {¶ 32} In the current matter, the trial court accordingly stated:
 {¶ 33} "Testimony of a person who you find to be an accomplice should be viewed with grave suspicion and weighed with great caution.
 {¶ 34} "Testimony was introduced that [the alleged accomplice] was convicted of criminal acts. This testimony may be considered for the purpose of helping you test the believability or weight to give to his testimony. It cannot be considered for any other purpose."
 {¶ 35} In State v. Estep (Mar. 5, 1996), 4th Dist. No. 94CA2072, 1996 Ohio App. LEXIS 915, the Fourth Appellate District held that the statutory charge functions as a warning: The caveat serves to alert the jury that accomplice testimony may have certain inherent problems. As such, the heart of the charge is its declaration that accomplice testimony should be viewed with "grave suspicion" and "weighed with great caution." Id. at 7. When a court employs such language, it has "substantially complied" with the spirit and substance of R.C. 2923.03(D). Id.; see, also, Christian, supra, at 13; State v. Williams (1996),117 Ohio App.3d 488, 494; State v. Tumbleson (1995),105 Ohio App.3d 693, 698. The instructions employed by the court below made verbatim use of these key phrases. Therefore, we are persuaded that the trial court's jury instruction was sufficient to accomplish the requisite warning embodied by R.C. 2923.03(D).
 {¶ 36} Appellant additionally argues that the court failed to give the requisite instructions immediately after mentioning L.C. Robinson's name and his status as an accomplice. As such, appellant maintains, the court's instructions were ineffective and failed to accomplish the purpose of R.C. 2923.03(D). Although we agree that the better practice would have the trial court provide the R.C. 2923.03(D) instructions immediately subsequent to its mention of the accomplice and/or his or her testimony, we nevertheless hold that the trial court substantially complied with R.C. 2923.03(D).
 {¶ 37} Appellant's first assignment of error is without merit.
 {¶ 38} In his second assignment of error, appellant argues that the court abused its discretion by overruling his motion for mistrial after the state referenced appellant's post arrest silence during its case in chief.
 {¶ 39} Commentary by prosecutors regarding a defendant's post arrest silence has always been viewed in an unfavorable light. Such comments are dangerous because they allow the jury to infer guilt from a defendant's assertion of his right to remain silent.State v. Williams (1979), 64 Ohio App.2d 271, 276. In essence, "such comments penalize a defendant for choosing to exercise a constitutional right. Doyle v. Ohio (1976), 426 U.S. 610, 618. In Doyle, the Supreme Court of the United States explained that the Miranda warnings convey an implied assurance to the accused that the state will not use a defendant's silence against him at trial. Id. Prosecutors must therefore take care not to equate the defendant's silence to guilt." State v. Thompson (1987),33 Ohio St.3d 1, 4.
 {¶ 40} During the state's direct examination of Officer Kacvinsky, the following exchange took place:
 {¶ 41} "Q. And then you spoke with the defendant, Mr. Fitzgerald; is that correct?
 {¶ 42} "A. Yes.
 {¶ 43} "Q. What, if anything, did he tell you?
 {¶ 44} "A. Nothing.
 {¶ 45} "Q. Did he wish to make a statement at that time?
 {¶ 46} "A. No.
 {¶ 47} Immediately following this exchange, defense counsel moved for a mistrial; in lieu of a mistrial, the court gave the following curative instruction:
 {¶ 48} "Ladies and gentlemen, under our constitution, there is no compulsion, no requirements that the defendant make any statement at all and any indication or suggestion that he should of [sic] or that he failed somehow, that that should be held against him should be disregarded."
 {¶ 49} The grant or denial of a motion for mistrial will not be disturbed on appeal absent an abuse of discretion. State v.Treesh (2001), 90 Ohio St.3d 460, 480, citing Crim.R. 33. A mistrial should not be ordered in a criminal case due to a mere irregularity; rather, a mistrial is necessary only when a fair trial is no longer possible. Id. "A single comment by a police officer as to a suspect's silence without any suggestion that the jury infer guilt from the silence constitutes harmless error." Id.
 {¶ 50} We agree that the prosecutor's reference to appellant's silence was untoward and admonish the state not to pose questions that might open the door to improper answers regarding a defendant's assertion of his or her right to silence. That said, however, we believe the comment created no necessary inference of guilt and the point was not belabored. Moreover, the alacrity with which the court issued its curative instruction functioned to further lessen the possibility of prejudice. Thus, we find no material Doyle violation and any error resulting from the prosecutor's remark referencing appellant's post-arrest silence was harmless.
 {¶ 51} Appellant's second assignment of error is overruled.
 {¶ 52} In his third assignment of error, appellant claims that his convictions are against the manifest weight of the evidence.
 {¶ 53} When reviewing a claim that the judgment was against the manifest weight of the evidence, we must review the entire record, weigh both the evidence and all the reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.State v. Thomkins (1997), 78 Ohio St.3d 380, 387. A manifest weight of the evidence claim contests the believability of the evidence presented. Id.
 {¶ 54} In order for an appellate court to reverse the judgment of the trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Thomkins,78 Ohio St.3d at 387. However, "[t]he discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id. at 387, citing State v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 55} In the instant case, appellant was convicted of two counts of complicity to commit aggravated robbery, each with a firearm specification, and one count of weapons under disability. The convictions for complicity to aggravated robbery were based upon evidence that appellant, a resident of Painesville, assisted Robinson and Fitzgerald in locating the victims and subsequently acting as a "look out" while the robbery took place. As both Robinson and Fitzgerald brandished firearms to effectuate the robbery, a firearm specification was attached to each count of complicity to aggravated robbery.
 {¶ 56} In State v. Johnson, 93 Ohio St.3d 240,2001-Ohio-1336, the Supreme Court of Ohio set forth the requirements for a conviction for complicity:
 {¶ 57} "To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime. Id. at syllabus.
 {¶ 58} Complicity to aggravated robbery requires a demonstration that (1) the parties entered a common plan or design, (2) while having a deadly weapon under their control; (3) use of the deadly weapon, (4) while committing a theft offense, (5) with the resulting injury being a natural probable consequence of the plan. See, Id., in conjunction with R.C.2911.01(A)(1).
 {¶ 59} In the instant case, the state presented evidence on each of these elements: Robinson testified how he, appellant, Michael Fitzgerald, and Eddie Baker met on the morning of May 14, 2001 in Cleveland. He stated that they discussed going to Painesville to "get money" as it was a "Lick City," i.e., an easy target. Robinson described how appellant was the "live-in" party, i.e., the local resident or person who knew the area and could show the group the best place to rob.[1] Robinson testified that, after their arrival in Painesville, the group drove down Prospect Street and noticed two males. Robinson asked whether the two males would be suitable targets, whereupon appellant allegedly responded: "Yeah, them two, they's easy to us." According to Robinson, appellant told him the two males were drug dealers.
 {¶ 60} Robinson testified that, after circling the neighborhood several times, Eddie Baker pulled into a mini-mart. Robinson and Michael Fitzgerald retrieved their firearms and commenced the robbery. In the meantime, Robinson stated, appellant and Baker remained in the car as "look outs." Robinson stressed that each party to the robbery knew their job: "Eddie, Pat's [appellant] job was to watch out for us and to pick us up after we hit this lick."[2]
 {¶ 61} Robinson stated that he and Michael Fitzgerald walked down the street toward the two victims, brandished their weapons, and robbed them. They retrieved an amount of fake crack cocaine and a small sum of cash. Immediately after the robbery, appellant and Baker pulled up in the car, Robinson and Michael Fitzgerald entered, and the car drove away.
 {¶ 62} In light of this evidence, appellant contends that his conviction is against the manifest weight because Robinson was the only witness connecting appellant to the crime.[3]
Appellant concludes Robinson's testimony was suspect and unreliable because he is a convicted felon, an admitted liar, and testified against appellant after pleading guilty to lesser charges.
 {¶ 63} Although appellant's characterizations of Robinson are correct, the record demonstrates that defense counsel brought this information to the jury's attention during trial. Further, in addition to instructing the jury pursuant to R.C. 2923.03(D) regarding the suspect nature of accomplice testimony, the trial court provided the jury with the following directive subsequent to Robinson's testimony:
 {¶ 64} "Ladies and gentlemen, testimony was introduced tending to prove that L.C. Robinson, Jr., was convicted of a criminal act, * * *. This testimony may be considered for the purpose of helping you test the credibility or weight to be given to this testimony. It cannot be considered for any other purpose. * * *"
 {¶ 65} Under the circumstances, the state presented substantial evidence upon which a jury could reasonably conclude that all elements were proved beyond a reasonable doubt. To be sure, the convictions were primarily based upon the testimony of Robinson, an accomplice in the crimes and appellant rightly attacks Robinson's credibility and veracity. However, "the weight to be given the evidence and the credibility of the witnesses areprimarily for the trier of the facts." (Emphasis added.) Statev. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Although we engage in a limited weighing of the evidence when conducting a manifest weight review, we cannot say the jury clearly lost its way and created such a miscarriage of justice that appellant's conviction must be reversed and a new trial ordered.
 {¶ 66} Appellant's third assignment of error is without merit.
 {¶ 67} For the aforementioned reasons, appellant's three assignments of error are overruled and therefore the verdict of the Lake County Court of Common Pleas is affirmed.
Christley, J., O'Neill, J., concur.
[1] Robinson testified that he had been to Painesville only twice. From the tenor of Robinson's testimony, appellant was the only party with any familiarity with Painesville, i.e., no testimony was elicited on how well the other parties knew the area.
[2] Again, according to Robinson, "lick" implies an easy target; here, he later clarified that the "licks" were "the people down by the empty lot."
[3] Moreover, appellant makes an ancillary argument that there was no evidence that he "possessed" the weapons imputed to him for purposes of his convictions. However, the complicity statute reads: "Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. * * *" R.C.2923.03(F).
Thus, where the state proves beyond a reasonable doubt that a party acted in complicity to aggravated robbery and the principal offenders possessed firearms, that party may be "prosecuted and punished as if he were a principal offender." Such was the situation in the current matter. Thus, appellant's claim has no merit.