OPINION
{¶ 1} Appellant, Michael A. King, appeals from his conviction and sentence in the Lake County Court of Common Pleas on one count of theft, a felony of the fifth degree, in violation of R.C. 2913.02(A)(1). He was sentenced to serve twelve months in prison, which is the maximum sentence for this crime.
 {¶ 2} The following facts are relevant to a determination of this appeal.
 {¶ 3} At approximately 10:00 p.m. on February 20, 2003, John Golob ("Golob") parked his van in front of the Giant Eagle grocery store on State Route 20 in Willoughby, Ohio. He entered the store to buy a few groceries and was in the store for only a few minutes. When he exited the store, he noticed that the side door of his van was open and a vehicle was parked perpendicularly to his van with its headlights shining into his van. The passenger-side door of the other vehicle was open and there was a male sitting in the passenger seat. Another male, later identified as appellant, was standing between the van and the other vehicle.
 {¶ 4} Golob dropped his groceries and ran toward his van. He yelled to the two men, "why are you stealing my tools?" Golob noticed that his large red toolbox was in the back of the other vehicle so he reached in and retrieved his property.
 {¶ 5} Golob then confronted appellant and asked why he would steal a working man's tools. According to Golob, appellant indicated that he was sorry and admitted that he should not have taken the tools. Appellant, however, stated that he found the toolbox in the parking lot next to Golob's van and he was in the process of putting the toolbox back into the van as any good Samaritan would.
 {¶ 6} Golob then began to drive away. Before he left the parking lot, he was stopped by Susan Skapin ("Skapin"), a witness to the incident, who indicated she had called the police on her cellular telephone. She gave the police a description of the vehicle that the two men were driving. Since the Willoughby Police Department is directly across the street from the Giant Eagle, police arrived within a couple of minutes.
 {¶ 7} Shortly thereafter, Golob was asked by the police to drive to the intersection of State Routes 20 and 91 where a Geo Tracker, fitting the description of the other vehicle, had been stopped. While Golob was unable to positively identify the passenger in the vehicle, he indicated that he was seventy-five percent to eighty percent sure that the driver of the Tracker was the man he had just confronted in the Giant Eagle parking lot. That person is appellant, Michael A. King.
 {¶ 8} At first, appellant gave the police a fictitious name. After he was informed that he would be transported to the police station for further questioning, appellant admitted to his real name. Initially, appellant agreed to speak to the police and that is when he told his story that he was, in fact, the man that had been confronted by Golob in the Giant Eagle parking lot, but that he was just trying to help out Golob by putting the toolbox back in Golob's van.
 {¶ 9} On April 14, 2003, the Lake County Grand Jury indicted appellant on one count of theft. The matter proceeded to a jury trial commencing on September 16, 2003. On September 17, 2003, appellant was found guilty as charged in the indictment. He was sentenced on September 23, 2003 to twelve months in prison.
 {¶ 10} Appellant timely filed a notice of appeal and has set forth the following assignments of error:
 {¶ 11} "[1.] The trial court violated appellant's rights to due process of law under the Fourteenth Amendment to the U.S. Constitution and under Sections 10 and 16, Article 1 of the Ohio Constitution when it allowed his post-arrest silence to be used against him at trial.
 {¶ 12} "[2.] The trial court committed plain error when it did not grant a mistrial where the jury was permitted to observe appellant in handcuffs in violation of his rights to due process as guaranteed by theFifth and Fourteenth Amendments to the United States Constitution and Sections 2 and 10, Article 1 of the Ohio Constitution.
 {¶ 13} "[3.] The trial court erred to the prejudice of the defendant-appellant when it denied his motion for acquittal made pursuant to Crim.R. 29.
 {¶ 14} "[4.] The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence.
 {¶ 15} "[5.] The trial court erred by sentencing defendant-appellant to the maximum term of imprisonment."
 {¶ 16} In the first assignment of error, appellant contends that the trial court erred by allowing his post-arrest silence to be used against him at trial to imply guilt. Appellant argues that a mistrial should have been declared after repeated testimony about his post-arrest silence was used against him. While curative instructions were given by the trial court, appellant asserts that the instructions did not go far enough and that only a mistrial would have sufficed.
 {¶ 17} The first incident occurred when Officer Daniel Pitts ("Officer Pitts") was recounting what happened after appellant was stopped by the police and identified by Golob as the perpetrator:
 {¶ 18} "Q. What happened to him at that time?
 {¶ 19} "A. Transported back to the Willoughby Police Department.
 {¶ 20} "Q. And did you transport him?
 {¶ 21} "A. Yes, I did.
 {¶ 22} "Q. What happened when you got back to the station?
 {¶ 23} "A. He was processed for various amounts of charges. We attempted to get a written statement from Mr. King as to his involvement in the situation, he refused to give us a statement.
 {¶ 24} "Q. Let me ask you —
 {¶ 25} "MR. GRIESHAMMER: Objection, Your Honor.
 {¶ 26} "THE COURT: Sustained. The Jury is to disregard that answer."
 {¶ 27} It must be noted that appellant did not refuse to speak to the police but, rather, only refused to reduce his statements to writing. This was evident to the jury.
 {¶ 28} Additionally, it is clear that there was nothing improper about the state's line of questioning. The assistant prosecutor was merely asking about the factual sequence of events that occurred on the night of the arrest. The officer was never specifically asked whether appellant refused to give a statement.
 {¶ 29} Also, the trial court took an additional step after Officer Pitts was finished testifying. The court stated as follows:
 {¶ 30} "THE COURT: * * * [B]efore [we] get along further in the course of the trial, I want to instruction [sic] you that the Defendant has the absolute Constitutional right to refuse to make a written statement at that point in time. I once again instruct you to disregard that testimony earlier and to consider it for no purpose in this trial and no purpose during deliberations. Once again, the Defendant exercised is [sic] Constitutional right not to make a written statement at that time."
 {¶ 31} The next incident occurred during the direct examination of Detective John Begovic ("Det. Begovic"), who had been assigned to question appellant regarding the incident in the Giant Eagle parking lot. Det. Begovic testified as follows:
 {¶ 32} "Q. Prior to speaking with Mr. King, did you advise him of his Constitutional rights?
 {¶ 33} "A. That's correct. I pulled out the miranda form, read it to him, he signed the form approximately 9:15 in the morning when the interview was started.
 {¶ 34} "Q. And what did you speak to Mr. King about?
 {¶ 35} "A. I interviewed him relating to the incident on the night before.
 {¶ 36} "* * *
 {¶ 37} "Q. After interviewing the Defendant at the station, what did you do next as far as the investigation goes?
 {¶ 38} "A. The Defendant requested he no longer speak with the detectives, we said that's fine, we escorted him back to the jail area. Shortly thereafter I received a phone call from the owner [of] the toolbox, that being John Golob."
 {¶ 39} At that point, defense counsel made an objection to Det. Begovic's reference to the fact that appellant no longer wanted to speak with the detectives. Following a sidebar, the trial court issued the following curative instruction:
 {¶ 40} "THE COURT: The objection is going to be sustained as to that portion related to he did not want to speak to us anymore, very similar but different wording as to what Patrolman Pitts said. Again, I instruct the Jury not to consider that portion of the answer for any purpose whatsoever. Again, by the Defendant saying he did not want to speak to us any longer, the Defendant simply exercised his Constitutional right not to make a statement, to that extent I ask you to disregard the answer. The rest of the answer was appropriate."
 {¶ 41} Once again, Det. Begovic was merely recounting what occurred at the police station on the morning after appellant's arrest. It is clear that the state did not elicit the response given by the detective regarding appellant's silence. The assistant prosecutor simply inquired as to what happened after interviewing appellant.
 {¶ 42} The trial court immediately responded by giving yet another curative instruction. The court explicitly explained that appellant had the constitutional right not to make a statement and that any reference to his silence must be disregarded by the jury.
 {¶ 43} The general rule is that a defendant's post-arrest silence cannot be used against him. Doyle v. Ohio (1976), 426 U.S. 610. This is because "[p]ost-arrest silence is inherently ambiguous since the silence may reflect only the defendant's exercise of his constitutional right to remain silent. * * * Any comment which infers that the defendant is guilty because he remained silent subverts the guarantees afforded him by the Fifth Amendment of the Constitution of the United States." State v.Williams (1979), 64 Ohio App.2d 271, 276; see, also, State v.Fitzgerald, 11th Dist. No. 2003-L-084, 2004-Ohio-6173, at ¶ 39.
 {¶ 44} This court has previously held that a single comment by a police officer regarding a suspect's silence, without any suggestion that the jury could infer guilt from the silence, is harmless error.Fitzgerald, supra, at ¶ 49, citing State v. Treesh (2001),90 Ohio St.3d 460, 480. In Fitzgerald, the officer was specifically asked whether the defendant chose to make a statement. Thus, the indiscretion was far more flagrant than in the present case where no such leading questions were posed. Yet, while this court admonished the state for posing a question that could open the door to an improper answer, we concluded that the curative instruction given by the trial court, together with the fact that the point was not belabored, resulted in a harmless error. Id. at ¶ 50.
 {¶ 45} Appellant also relies on the decision of the United States Supreme Court in Brecht v. Abrahamson (1993), 507 U.S. 619, in which the court stated that where testimony is admitted regarding a defendant's post-arrest silence, such error should "be quantitatively assessed in the context of other evidence presented in order to determine [the effect it had on the trial]." Id. at 629.
 {¶ 46} Upon conducting such a quantitative analysis, it is this court's conclusion that there was substantial evidence of appellant's guilt including verbal statements given by appellant himself. Between the abundance of other evidence presented by the state, and the curative instructions given by the trial court on the issue of appellant's post-arrest silence, we must conclude that this did not constitute error.
 {¶ 47} Based upon the foregoing analysis, appellant's first assignment of error is without merit.
 {¶ 48} In the second assignment of error, appellant contends that the trial court committed plain error when it did not declare a mistrial after the jury was permitted to observe him in handcuffs and being escorted by sheriff's deputies.
 {¶ 49} While it is not clear from the record exactly when the jury may have seen appellant in handcuffs, the trial court gave the jury the following instruction prior to closing arguments:
 {¶ 50} "THE COURT: I need to advise you that some of you may have seen the Defendant in the presence of deputy sheriffs in the course of this trial. The Defendant is presently in jail, but that is only because it's in lieu of his posting bond in this particular case. The fact that he's in jail is not to be considered by you for any purpose whatsoever in this case and you are to decide the issues before you when you deliberate here today. Is that adequate, Mr. Grieshammer?
 {¶ 51} "MR. GRIESHAMMER: Yes, Your Honor."
 {¶ 52} Thus, it is clear that defense counsel was satisfied with the curative instruction given by the trial court. Accordingly, any error except for plain error would be waived since there was no objection at the trial court level. Crim.R. 52(B). In order to find plain error, an appellate court must conclude that, but for the error, the outcome of the trial clearly would have been different. State v. Ballew (1996),76 Ohio St.3d 244, 251.
 {¶ 53} In a similar case recently decided by this court, we held that when the juror's view of a defendant in custody is brief, inadvertent and outside of the courtroom, the danger of prejudice to the defendant is slight. State v. Totarella, 11th Dist. No. 2002-L-147, 2004-Ohio-1175, at ¶ 51, quoting State v. Kidder (1987), 32 Ohio St.3d 279, 286. Additionally, a curative instruction by the trial court counters any possible prejudice.
 {¶ 54} In the case at bar, it is unknown when, where, or for what period of time the jurors may have seen appellant in handcuffs or accompanied by sheriff's deputies. The record is devoid of that information. Under these circumstances, it is impossible to conclude that, but for this alleged improper viewing, the outcome of the trial would have been different. Accordingly, there was no plain error.
 {¶ 55} Hence, appellant's second assignment of error is also without merit.
 {¶ 56} In the third assignment of error, appellant maintains that the trial court erred when it denied his motion for acquittal made pursuant to Crim.R. 29.
 {¶ 57} The Supreme Court of Ohio established the standard for evaluating motions for acquittal in State v. Bridgeman (1978),55 Ohio St.2d 261, syllabus; see, also, State v. Talley (Sept. 25, 1998), 11th Dist. No. 97-L-169, 1998 Ohio App. LEXIS 4526. The Bridgeman
court stated that "if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt," a judgment of acquittal on a Crim.R. 29 motion should not be granted. Id.
 {¶ 58} In the case sub judice, appellant was charged with theft in violation of R.C. 2913.02 which provides, in pertinent part:
 {¶ 59} "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 {¶ 60} "(1) Without the consent of the owner or person authorized to give consent."
 {¶ 61} Additionally "knowingly" has been defined in R.C. 2901.22 as follows:
 {¶ 62} "(B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature."
 {¶ 63} Furthermore, "deprive" is defined in R.C. 2913.01 as follows:
 {¶ 64} "(C)(1) Withhold property of another permanently, or for a period that appropriates a substantial portion of its value or use, or with purpose to restore it only upon payment of a reward or other consideration[.]"
 {¶ 65} It is appellant's contention that the state failed to show that he acted with purpose to deprive Golob of property; namely, Golob's toolbox and the tools contained in it. Appellant argues that he told the police that the toolbox was lying on the ground in the parking lot next to Golob's van and that he was merely attempting to return the item to the van when he was confronted by Golob.
 {¶ 66} Appellant also claims that there was evidence presented that it was his friend, Israel Castro, that Golob caught with the toolbox and that he was the innocent bystander seated in the Tracker.
 {¶ 67} However, after reviewing the wealth of evidence which contradicted appellant's claims, it is clear that reasonable minds could have reached different conclusions as to the material elements of the crime of theft. There was an abundance of evidence from which a reasonable mind could conclude that appellant was caught in the act of exerting control over the property of another with the intent to deprive that person of the property. There is no question but that Golob had not given consent to anyone to remove his toolbox from his van. The eyewitness, Skapin, confirmed the fact that Golob had not given anyone permission to touch his tools, and that it appeared to be simple theft.
 {¶ 68} Accordingly, the trial court did not err by denying appellant's motion for acquittal.
 {¶ 69} Appellant's third assignment of error is without merit.
 {¶ 70} In the fourth assignment of error, appellant submits that his conviction was against the manifest weight of the evidence.
 {¶ 71} It is well established that the test to determine whether a conviction is against the manifest weight of the evidence is as follows:
 {¶ 72} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983), 20 Ohio App.3d 172, 175; Statev. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at 13-14.
 {¶ 73} The Supreme Court of Ohio has accepted the application of this test. See State v. Thompkins (1997), 78 Ohio St.3d 380, 387. This court has also endorsed this test. State v. Simon (May 26, 2000), 11th Dist. No. 98-L-134, 2000 Ohio App. LEXIS 2272.
 {¶ 74} It is also well established that the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to decide. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 75} In the instant cause, appellant's argument in support of his manifest weight claim is that he "may not be the person who tried to take [Golob's] tools away." He points to the fact that Golob was only seventy five percent to eighty percent sure that appellant was the individual he had confronted in the Giant Eagle parking lot. Appellant also points to certain alleged discrepancies between Golob's description of the vehicle in the parking lot and the actual Tracker that appellant was driving.
 {¶ 76} These are rather odd arguments given the fact that appellant had admitted to the police that he was, in fact, one of the two men in the parking lot that had been confronted by Golob, and that he had, at least temporarily, possession of Golob's red toolbox. The story appellant offered to the police was that he was returning the toolbox to the van. He never denied being at the scene of the incident.
 {¶ 77} There was no question that appellant was involved to some extent in the toolbox controversy in the Giant Eagle parking lot on the evening of February 20, 2003. It was also undisputed that when appellant was stopped by the police minutes after the incident, he gave the police a false name. It was further established that the dark jacket that Golob said the suspect was wearing was found stuffed under the seat in the Tracker in an apparent attempt to further hide his identity. The only pertinent question of fact for the jury was whether they believed that appellant was stealing the toolbox or simply returning the toolbox which he claimed he found in the parking lot.
 {¶ 78} Given appellant's attempts at deceiving the police, we cannot conclude that the jury clearly lost its way and created a manifest miscarriage of justice. Accordingly, appellant's conviction was not against the manifest weight of the evidence.
 {¶ 79} Appellant's fourth assignment of error is without merit.
 {¶ 80} In the fifth assignment of error, appellant contends that the trial court erred by sentencing him to the maximum term of imprisonment. Specifically, appellant argues that the trial court did not comply with the statutory guidelines that it must follow when imposing a maximum sentence.
 {¶ 81} Preliminarily, this court notes that appellant has already served his sentence in this case. As this court has previously held:
 {¶ 82} "If an individual has already served his sentence, there is no collateral disability or loss of civil rights that can be remedied by a modification of the length of that sentence in the absence of a reversal of the underlying conviction. Therefore, appellant's assertion that the trial court erred in determining the length of that sentence is a moot issue because appellant has already served his sentence, and no relief can be granted by this court subsequent to the completion of the sentence if the underlying conviction itself is not at issue." State v. Beamon
(Dec. 14, 2001), 11th Dist. No. 2000-L-160, 2001 Ohio App. LEXIS 5655.
 {¶ 83} Based up the foregoing, appellant's fifth assignment of error is moot. However, even if we address it on its merits, it is clear that appellant would not prevail.
 {¶ 84} When reviewing a felony sentence at the appellate level, the appellate court must engage in a de novo review pursuant to R.C. 2953.08.State v. Raphael (Mar. 24, 2000), 11th Dist. No. 98-L-262, 2000 Ohio App. LEXIS 1200, at 4. An appellate court should not disturb a sentence unless it finds, by clear and convincing evidence, that the record does not support the sentence or that the sentence is otherwise contrary to law. State v. Thomas (July 16, 1999), 11th Dist. No. 98-L-074, 1999 Ohio App. LEXIS 3334, at 10, citing State v. Rose (Sept. 15, 1997), 12th Dist. No. CA96-11-106, 1997 Ohio App. LEXIS 4161, at 15.
 {¶ 85} Additionally, in State v. Comer, 99 Ohio St.3d 463,2003-Ohio-4165, the Supreme Court of Ohio held that a trial court must state its findings and reasoning within the record of the sentencing hearing and the judgment entry of sentencing before imposing a sentence which exceeds the minimum term of incarceration, unless the defendant is a repeat offender. Id. at paragraph two of the syllabus.
 {¶ 86} In the present case, appellant was given the maximum sentence for a fifth degree felony: twelve months in prison. The trial court handed down this sentence only after specifically finding that appellant had a long history of criminal convictions dating back to 1977. He had served five different prison terms for a variety of offenses. The court concluded that there had been "a failure of rehabilitation," and that "the likelihood of recidivism is very high."
 {¶ 87} R.C. 2929.14(C) states:
 {¶ 88} "Except as provided in division (G) of this section or in Chapter 2925. of the Revised Code, the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section."
 {¶ 89} Thus, the trial court had the discretion to impose the maximum sentence in this case if it determined that appellant posed the greatest likelihood of committing future crimes. That is exactly what the trial court found.
 {¶ 90} Additionally, pursuant to R.C. 2929.19(B)(2)(d), the trial court, in imposing a maximum sentence, was required to "make a finding that gives its reasons for selecting the sentence imposed."
 {¶ 91} In the trial court's sentencing judgment, it clearly adhered to the foregoing requirements governing the imposition of a maximum sentence. The trial court found that "for the reasons stated on the record pursuant to Revised Code Section 2929.14(C) that the Defendant poses the greatest likelihood of recidivism." The trial court explained its reasoning during the sentencing hearing. It stated:
 {¶ 92} "Based upon the information presented by counsel here in open Court today, the Court is deeply concerned with respect to recidivism factors, there is a long history of criminal convictions as set forth by the Prosecution, and there is also a history of multiple terms of imprisonment in the past, clearly there has been a failure of rehabilitation after those prior convictions, and the Defendant has not responded favorable to probation or parole in the past.
 {¶ 93} "* * *
 {¶ 94} "One [sic] again, as indicated, the likelihood of recidivism is very high based upon the past criminal history, prior prison terms, thus the Court feel[s] it's appropriate to impose the maximum sentence in this particular case."
 {¶ 95} It is clear that the record supports the trial court's sentence. The assistant prosecutor detailed a lengthy history of appellant's criminal past, and the trial court relied on that history to conclude that the likelihood of recidivism is very high. We will not disturb a sentence where the record supports the sentence and the trial court has complied with all statutory requirements.
 {¶ 96} Hence, the trial court did not err by imposing the maximum sentence in this case.
 {¶ 97} Appellant's fifth assignment of error is without merit.
 {¶ 98} The judgment of the trial court is hereby affirmed.
Grendell, J., Rice, J., concur.