[Cite as *State v. Ferguson*, 2013-Ohio-4798.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                             :

      Plaintiff-Appellee,                            :                    No. 12AP-1003
                                                                                      (C.P.C. No. 12CR-05-2222)

v.                                                               :

                                                                                      (REGULAR CALENDAR)

Jared T. Ferguson,                                    :

      Defendant-Appellant.                        :

---

D E C I S I O N

Rendered on October 31, 2013

---

*Ron O'Brien*, **Prosecuting Attorney, and** *Sheryl L. Prichard,* **for appellee.**

*Yavitch & Palmer Co., L.P.A.*, **and** *Jeffery A. Linn, II*, **for appellant.**

---

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Defendant-appellant, Jared T. Ferguson ("appellant"), appeals from a judgment of the Franklin County Court of Common Pleas convicting him of the crimes of failure to comply with an order or signal of a police officer by operating a motor vehicle to elude or flee the officer in violation of R.C. 2921.331 ("failure to comply"). The jury further found that appellant had operated the vehicle in a manner causing a substantial risk of serious physical harm to persons or property, a third-degree felony. The court also convicted appellant of receiving stolen property, in violation of R.C. 2913.51. The court sentenced appellant to serve three years for the failure to comply offense and six months for the receiving stolen property offense, a fourth-degree felony; the sentences to run consecutively. For the following reasons, we affirm.

## I.  Facts and Case History

{¶ 2}   The appellant's alleged crimes occurred following an attempted robbery of a Cracker Barrel restaurant in Grove City, Ohio, by appellant's acquaintance, Tyson Teague. Teague testified that he had purchased heroin from appellant in the five- to six-week period prior to the attempted robbery and that he owed appellant money at that time.  He stated that he attempted to rob the restaurant to get cash that he could pay to appellant and that appellant was aware of his intent to commit the robbery.  Teague testified, however, that another individual—not appellant—transported Teague to the Cracker Barrel.

{¶ 3}   The robbery was unsuccessful due to the presence of an off-duty policer officer in the restaurant, who intervened and pursued Teague on foot to a nearby gas station.  Appellant was in a red Chevrolet Tahoe sports utility vehicle (the "SUV") in the parking lot of the gas station.  Teague entered the backseat of the SUV on the passenger's side after first approaching another vehicle, whose driver did not allow Teague to enter it.

{¶ 4}   The pursuing police officer approached the SUV and told appellant to get out. Instead, appellant exited the gas station at a high rate of speed.  Grove City police officers arrived at the gas station, observed appellant leaving the station, and followed appellant with lights and sirens deployed until the SUV began sputtering and eventually crashed, apparently having run out of gas.  During the chase, appellant drove the SUV at speeds of approximately 80 miles per hour on streets with 35-mile-per-hour limits, through moderately heavy traffic, and through the parking lots of a shopping district in which numerous pedestrians were present.  Police observed appellant nearly strike two other vehicles, hit a curb, roll over bushes and trees, and eventually come to a stop against a pine tree.  One officer testified that the high-speed chase posed a substantial risk of physical harm both to him and to others who were either driving or walking in the area of the chase.

{¶ 5}   Appellant's estranged wife owned the SUV. She testified at appellant's trial that appellant had taken the keys to the SUV from her purse and driven the car away from her residence without her permission. She further testified that she had reported the SUV as stolen to the Columbus police and had informed them that she suspected appellant had taken the SUV.

{¶ 6} Teague and appellant were both indicted in a single indictment and charged with multiple criminal counts. Appellant's case was tried separately to a jury, and Teague testified against appellant at trial. The jury returned guilty verdicts on the two criminal counts described above but found appellant not guilty on two counts of robbery and on one count of failure to comply while fleeing after the commission of a robbery or attempted robbery.

## II. Assignments of Error

{¶ 7} Appellant timely appealed from his conviction, raising five assignments of error, as follows:

> ASSIGNMENT OF ERROR NO. 1:
>
> THE TRIAL COURT VIOLATED APPELLANT'S RIGHT TO CONFRONTATION AND RIGHT TO PRESENT A FULL AND COMPLETE DEFENSE AS GUARANTEED BY THE SIXTH AMENDMENT AND FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION BY PRECLUDING QUESTIONS OF DETECTIVE MATT RYAN REGARDING THE STAR WITNESS'S PRIOR INCONSISTENT STATEMENTS AND CONDUCT.
>
> ASSIGNMENT OF ERROR NO. 2:
>
> THE TRIAL COURT DEPRIVED APPELLANT OF THE RIGHT TO PRESENT A FULL AND COMPLETE DEFENSE AND A TRIAL BY JURY AS GUARANTEED BY THE SIXTH AMENDMENT AND FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION BY REFUSING TO INSTRUCT THE JURY ON THE AFFIRMATIVE DEFENSE OF DURESS AND/OR NECESSITY.
>
> ASSIGNMENT OF ERROR NO. 3:
>
> THE TRIAL COURT ERRED BY MODIFYING THE STATU-TORILY REQUIRED LANGUAGE IN THE JURY INSTRUC-TIONS REGARDING ACCOMPLICE TESTIMONY BY RE-MOVING THE LANGUAGE "GRAVE SUSPICION."
>
> ASSIGNMENT OF ERROR NO. 4:
>
> THE TRIAL COURT ERRED BY OVERRULING APPEL-LANT'S CRIM. R. 29 MOTION FOR JUDGMENT OF

ACQUITTAL, AND THEREBY DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION.

ASSIGNMENT OF ERROR NO. 5:

THE TRIAL COURT ERRED BY FINDING APPELLANT GUILTY AND THEREBY DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY PROVISIONS OF THE OHIO CONSTITUTION BECAUSE THE VERDICT OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

## III. Analysis

### A. *Alleged Error of Precluding Testimony—Evid.R. 613(B)*

{¶ 8}   In his first assignment of error, appellant alleges that the trial court erred in limiting examination of Grove City police detective Matt Ryan ("Detective Ryan"), who appellant had called as a defense witness.  Detective Ryan had interviewed both Teague and appellant on the night of their arrest.  Appellant argues that the trial court failed to correctly apply Evid.R. 613(B), which allows extrinsic evidence of prior inconsistent statements under certain circumstances.  He further contends that the court denied him his constitutional right to confront witnesses against him and his right to present a full defense.

{¶ 9}   Appellant supports his first assignment of error by positing that Teague made several statements and allegations during the police interview on the night of the arrest that were false or later contradicted by Teague's own statements.  Appellant contends that he should have been permitted to inquire into those contradictions and inconsistent statements through questioning of Detective Ryan as to what Teague had said in the interview and that the trial court erred by refusing that inquiry.

{¶ 10} The court did not, however, disallow any specific questions asked of Detective Ryan.  That is, appellant has not identified any questions asked of Detective Ryan that the court refused to allow him to answer.  Nor did appellant proffer any specific questions that defense counsel would have asked had she been permitted.

{¶ 11} Appellant does, however, reference the following discussion that occurred out of the presence of the jury after a break in Detective Ryan's testimony:

THE COURT: At sidebar during Detective Ryan's testimony, we had a discussion about how much contradiction of Teague's testimony was going to be permitted using the police officer or his records, and I felt that it was collateral impeachment and was improper. * * * [T]here [were] a lot of additional oral questions that [Detective Ryan] answered about, well, wasn't Teague contradictory about this or did he change his story about that. * * *

I did allow questions about his pitch to law enforcement for a chance to testify about drugs, and I think that was over [the state's] objection, if I remember correctly. * * *

So those are my rulings. If either side wants to put anything more on the record to protect the record.

[DEFENSE COUNSEL]: I believe that I should have been allowed to explore the contradictions about Mr. Teague—statements he made. Mr Teague had already testified. I was able to cross-examine him, and when I cross-examined him, I confronted him with prior inconsistent statements. * * *

* * * I should have * * * either been able to * * * ask this officer, since he was the one who talked to [Teague] and had the personal knowledge, or actually put on Teague's statement to show the prior inconsistent statements, and I was denied that opportunity.

* * *

[THE STATE'S COUNSEL]: Judge, quite honestly, I'm not sure which statement she's talking about since Mr. Teague was on the stand for the better part of maybe 45 minutes to an hour.

* * *

THE COURT: * * * I think the principal inconsistency, as I understood it, was explored with Teague here in court in front of the jury, and that was this question about who the

driver was that he entrusted his black SUV to or to his wife's black SUV.[1]

(Tr. Vol. II, 64-67.)

{¶ 12} Following this exchange, the jury returned, and the court asked defense counsel if appellant wished to introduce additional defense evidence. Defense counsel responded "no," and the defense rested.

{¶ 13} The record thus demonstrates that the court ruled generally that further inquiry of Detective Ryan concerning Teague's statements after arrest would, if made, be deemed inadmissible collateral impeachment. Appellant did not, however, ask Detective Ryan any specific questions concerning Teague's allegedly prior inconsistent statements that the court disallowed, nor did defense counsel proffer any specific questions that she wanted Detective Ryan to answer. Appellant has, in a strict sense, therefore failed to demonstrate that the trial court excluded testimony that it should have allowed. *Accord State v. Adams*, 10th Dist. No. 12AP-83, 2012-Ohio-5088, ¶ 40 (failure to actually attempt impeachment of witnesses through extrinsic evidence of prior inconsistent statements, i.e., prior videotaped statements of witnesses, precluded a finding that the trial court had abused its discretion in applying Evid.R. 613(B)).

{¶ 14} Moreover, even if we generously construe the record in favor of appellant, it is apparent that questioning of Detective Ryan to demonstrate an inconsistency between Teague's trial testimony and his statements made on the night of the arrest does not fall within the scope of Evid.R. 613(B). That rule provides:

> Extrinsic evidence of a prior inconsistent statement by a witness is admissible *if both* of the following apply:
>
> (1) If the statement is offered solely for the purpose of impeaching the witness, the witness is afforded a prior opportunity to explain or deny the statement and the opposite party is afforded an opportunity to interrogate the

---

[1] Defense counsel asked Detective Ryan to identify the individual Teague had initially said dropped him off at the Cracker Barrel. Detective Ryan said Teague had said on the night of the arrest that appellant dropped him off. Detective Ryan further testified that he was surprised when he first saw a surveillance video from the Cracker Barrel that Teague appeared to first run to a black SUV upon exiting the restaurant but that the black vehicle left before Teague could get in. Detective Ryan had expected to see video of Teague running to a red vehicle, consistent with the SUV involved in the police chase. Detective Ryan testified that Teague later changed his story and abandoned his contention that appellant had dropped him off at the Cracker Barrel.

witness on the statement or the interests of justice otherwise require;

(2) The subject matter of the statement is one of the following:

(a) A fact that is of consequence to the determination of the action other than the credibility of a witness;

(b) A fact that may be shown by extrinsic evidence under Evid.R. 608(A), 609, 616(A), or 616(B);

(c) A fact that may be shown by extrinsic evidence under the common law of impeachment if not in conflict with the Rules of Evidence.

(Emphasis added.)

{¶ 15} Evid.R. 613(B), thus, allows introduction of extrinsic evidence of a prior statement only after a proper foundation has been laid through direct or cross-examination in which: " ' "(1) the witness [here Teague] is presented with the former statement; (2) the witness is asked whether he made the statement; (3) the witness is given an opportunity to admit, deny or explain the statement; and (4) the opposing party is given an opportunity to interrogate the witness on the inconsistent statement." ' " *State v. Kulasa*, 10th Dist. No. 11AP-826, 2012-Ohio-6021, ¶ 12, quoting *State v. Mack,* 73 Ohio St.3d 502, 514-15 (1995), quoting *State v. Theuring,* 46 Ohio App.3d 152, 155 (1st Dist.1988). If a witness denies making a prior inconsistent statement, a proper foundation has been laid, and if, in addition, the prior inconsistent statement does not relate to a collateral matter, extrinsic evidence is admissible. *Kulasa* at ¶ 19. If a witness admits having made the contradictory statements, however, then extrinsic evidence of the prior inconsistent statement is not admissible. *In re M.E.G.*, 10th Dist. No. 06AP-1256, 2007-Ohio-4308*; State v. Hill,* 2d Dist. No. 20028, 2004-Ohio-2048, ¶ 40. A trial court's ruling on an Evid.R. 613(B) issue, like other evidentiary rulings, is reviewed for an abuse of discretion. *Kulasa* at ¶ 13, citing, inter alia, *State v. Reiner*, 89 Ohio St.3d 342, 357-58 (2000).

{¶ 16} In order to determine whether appellant established a foundation under Evid.R. 613(B)(1), we first look to the record to determine what prior statements Teague

was "afforded a prior opportunity to explain or deny." Teague testified that he was taken to the Cracker Barrel in a black SUV being driven by an individual whose street name was "Drac." He acknowledged that he had stated in his initial police interview that appellant had dropped him off at the Cracker Barrel and that his prior statement "was not true." (Tr. Vol. I, 148.) Accordingly, Teague himself acknowledged that he had made a statement on the night of his arrest that was inconsistent with his trial testimony, thereby himself admitting facts that impugned his credibility.

{¶ 17} In their briefs in this court, the parties have presented contrasting arguments concerning the legal effect in this Evid.R. 613(B)(1) analysis of Teague's inability at trial to remember whether he had made certain other statements to Detective Ryan after his arrest. Teague did not remember whether he had told the detective that appellant "was one of the biggest [drug] dealers in Columbus" (Tr. Vol. I, 156), but did remember telling the detective that appellant was a "big dealer." Teague did not remember whether he had referred to appellant as "Jared," or whether he had told the officer that he did not know appellant's last name. Moreover, Teague did not remember whether he had told the detective that he was being honest with the detective during the interview.

{¶ 18} The parties have addressed Teague's memory issues in the context of the question of whether appellant laid a proper foundation for admission of extrinsic evidence. Appellant contends that a witness's profession that he "can't remember" making allegedly inconsistent prior statements satisfies the foundational requirement of Evid.R. 613(B)(1) that a proper foundation must be established in order to allow extrinsic evidence. Indeed, the Courts of Appeals for the Second and Fifth Districts have held that the required foundation is established where a witness denies an ability to remember whether he or she previously made a prior statement. *State v. Reed,* 155 Ohio App.3d 435, 2003-Ohio-6536 (2d Dist.), ¶ 30 ("if the witness says he cannot remember the prior statement, 'a lack of recollection is treated the same as a denial, and use of extrinsic impeachment evidence is then permitted.' "). *Accord State v. Allen*, 5th Dist. No. 2012CA00196, 2013-Ohio-3715, ¶ 6-12. *See also State v. Prysock*, 10th Dist. No. 86AP-492 (July 16, 1987) (testimony that witness could not remember if he made a prior statement established foundation for impeachment through extrinsic evidence). *Compare*

*State v. Crawford*, 10th Dist. No. 85AP-324 (Feb. 6, 1986) (foundation for introduction of audiotape not laid where, inter alia, witness did not remember what she had told officer, or chose to ignore what she said). But, in any event satisfying the foundation requirement of Evid.R. 613(B)(1) does not address the second requirement of the rule contained in Evid.R. 613(B)(2).

{¶ 19} Evid.R. 613(B) is explicit that extrinsic evidence is admissible to impeach credibility only if a foundation is laid and also that the subject matter of an alleged prior inconsistent statement falls within the scope of either Evid.R. 613(B)(2)(a), (b) or (c) ("[e]xtrinsic evidence of a prior inconsistent statement by a witness is admissible if *both*" Evid. R. 613(B)(1) and B(2) apply. (Emphasis sic.)). *Accord, Kulasa,* ¶ 11 (observing that extrinsic evidence of a witness's prior inconsistent statements is admissible for purposes of impeaching if *both* Evid. R. 613(B)(1) and (2) are present); *Reed.* Even assuming, arguendo, that Teague made statements on the night of his arrest that were inconsistent with his testimony at trial, that circumstance does not require a conclusion that the court had an obligation to allow the defense to question Detective Ryan to illustrate those inconsistencies. This is because, even where the required foundation has been laid, extrinsic evidence is admissible to impugn a witness's credibility through demonstration of prior inconsistent statements only when at least one of the additional conditions established by Evid.R. 613(B)(2) is met.

{¶ 20} Accordingly, extrinsic evidence of Teague's statements on the night of his arrest was admissible under Evid.R. 613 only if the subject matter of Teague's alleged inconsistent statements on that night concerned either (1) a "fact that is of consequence to the determination of the action other than the credibility of a witness," (Evid.R. 613(B)(2)(a)); (2) a fact described in Evid.R. 608(A), 609, 616(A), or 616(B) (Evid.R. 613(B)(2)(b)); or (3) "[a] fact that may be shown by extrinsic evidence under the common law of impeachment if not in conflict with the Rules of Evidence." (Evid.R. 613(B)(2)(c).)

{¶ 21} In this case, none of Teague's prior statements for which defense counsel laid a foundation pursuant to Evid.R. 613(B)(1) falls into a category listed in 613(B)(2).

1. *Evid.R. 613(B)(2)(a)*

{¶ 22} None of the questions asked by defense counsel that Teague failed to answer due to his professed inability to remember related to a fact that was of consequence to the

determination of the action as opposed to a fact that only impugned Teague's credibility. The questions did not concern a fact of consequence as to the criminal counts of which appellant was found guilty, i.e., whether appellant was guilty of failure to comply and receiving stolen property. It is of no consequence, except as to Teague's credibility, whether Teague told Detective Ryan that appellant was one of the biggest drug dealers in Columbus as opposed to simply being a drug dealer, or whether he had told the detective both appellant's first and last names.

{¶ 23} Accordingly, the prior statements for which defense counsel in this case laid a foundation for admission of possible contradictory extrinsic evidence do not fall within Evid.R. 613(B)(2)(b).

2. *Evid.R. 613(B)(2)(b)*

{¶ 24} Nor do any of Teague's prior statements for which appellant laid a foundation for introduction of contradictory extrinsic evidence fall into any of the categories listed in Evid.R. 613(B)(2)(b), i.e., Evid.R. 608(A) (involving opinion or reputation evidence concerning the witness's character or reputation), Evid.R. 609 (evidence of conviction of a crime), Evid.R. 616(A) (bias, prejudice, interest or motive to misrepresent); or Evid.R. 616(B) (sensory or mental defects impairing capacity, ability, or opportunity to remember).

{¶ 25} As to the latter category, Evid.R. 616(B), i.e., extrinsic evidence to demonstrate sensory or mental defects, appellant asserts that Teague repeatedly indicated during his cross-examination that the reason why he could not remember whether he had made these statements or answer other questions concerning what he had said during the initial police interview was because he was "dope sick" on the night of the arrest as a result of drug withdrawal. But Teague never denied that his mental capacity was impaired on the night of his arrest—he readily admitted it. Accordingly, Teague's acknowledgement that he was suffering from drug withdrawal does not implicate Evid.R. 613(B). Teague did not tell Detective Ryan on the night of his arrest that he was, at that time, fully competent. Instead, appellant's statements that night and later at trial were entirely consistent. Both times he stated that, on the day of the robbery, he was suffering the effects of drug withdrawal.

3. *Evid.R. 613(B)(2)(c)*

Appellant additionally argues the common law permitted impeachment when there was "specific contradiction," within the purview of Evid.R. 613(B)(2)(c), citing *State v. Forbes*, 12th Dist. No. CA2007-01-001, 2007-Ohio-6412. But appellant has not demonstrated, nor proffered, the existence of a specific contradiction between Teague's testimony at trial and his prior statements made to Detective Ryan.

{¶ 26} Appellant further argues that he should have been permitted to question Detective Ryan concerning Teague's statements on the night of the arrest in order to impeach Teague's testimony at trial that he did not remember everything he said on the night of his arrest. But whether Teague was untruthful in denying an ability to remember his earlier statements could not have been established by eliciting testimony from Detective Ryan as to Teague's statements made on the night of the arrest. Nothing he said that night (which is the evidence that defense counsel argues the court erroneously excluded) would have tended to either prove or disprove whether Teague actually remembered those statements at the time of trial.

**B.** *Alleged Error in Precluding Testimony—Constitutional Violations*

{¶ 27} Appellant further argues in his first assignment of error that appellant was deprived of his right to present relevant evidence as guaranteed by the Sixth and Fourteenth Amendments to the U.S. Constitution, and Ohio COnstitution, Article I, Section 10. Appellant contends that the trial court's ruling precluding the admission of extrinsic evidence violated appellant's constitutional right to confront witnesses and present a full and complete defense. But appellant also acknowledges that the Sixth Amendment right to present relevant testimony does not preclude the exclusion of testimony that is " 'incompetent, privileged, or otherwise inadmissible under the standard rules of evidence.' " (Appellant's brief, 6, quoting *Taylor v. Illinois*, 484 U.S. 400 (1988).

{¶ 28} As discussed, supra, the trial court did not err in applying Evid.R. 613 in this case to limit introduction of questioning of Detective Ryan concerning Teague's statements on the night of the arrest. Accordingly, no constitutional violation occurred, as the testimony appellant was precluded from eliciting was "inadmissible under the standard rules of evidence." Appellant's counsel was not limited in his cross-examination of Teague in a manner inconsistent with the Ohio Rules of Evidence. Nor was appellant deprived of the right to physically face and cross-examine Teague, who was a witness

against him.   Appellant's arguments that he was deprived of constitutional rights lacks merit.

{¶ 29} We therefore overrule appellant's first assignment of error.

## C. *Alleged Error in Jury Instructions—Duress and Necessity*

{¶ 30} In his second assignment of error, appellant argues that the evidence supported an instruction on the affirmative defense of duress and necessity.  Appellant suggests that the evidence supported the theory that the reason appellant did not stop his vehicle after attempting to escape from police pursuit, and instead engaged in a high-speed escape attempt, was that he was under duress from Teague.

{¶ 31} We note that trial counsel did not object to the instruction and thereby waived any objection he may have had relative to the court's determination not to instruct on duress and necessity absent demonstration of plain error.   "Plain error does not exist unless it can be said that but for the error, the outcome of the proceedings would clearly have been otherwise."  *See State v. Todd*, 10th Dist. No. 06AP-1208, 2007-Ohio-4307, ¶ 22.

{¶ 32} Further, even had appellant timely objected to the instruction, appellant's substantive arguments lack merit.  The legal principles underlying the defense of duress are, as follows:

> The defense of duress is an affirmative defense. * * * A trial court should give a requested jury instruction on an affirmative defense when the defendant has introduced sufficient evidence, which, if believed, would raise a question in the minds of reasonable men concerning the existence of such a defense. * * * A trial court may only instruct the jury on issues raised by the indictment and evidence. * * *
>
> When determining whether a trial court erred in its jury instructions, an appellate court reviews the instruction as a whole. * * * A trial court has broad discretion in instructing the jury.  * * * An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. * * *
>
> "Duress consists of any conduct which overpowers a person's will and coerces or constrains his performance of an act which he otherwise would not have performed. Consequently, one who, under the pressure of a threat from another person,

> commits what would otherwise be a crime may, under certain circumstances, be justified in committing the act and not be guilty of the crime." * * * The defense of duress requires a sense of immediate, imminent death or serious bodily injury if the actor does not commit the act as instructed. * * * The force that is used to compel the defendant's conduct must remain constant, controlling the will of the unwilling actor during the entire time he commits the act, and must be of such a nature that the actor cannot safely withdraw. * * *
>
> * * *
>
> * * * [T]he affirmative defense of duress is available only in rare circumstances * * *."

(Citations omitted.) *State v. Thompson,* 10th Dist. No. 08AP-956, 2009-Ohio-3552, ¶ 26-28, 31,

{¶ 33} The evidence presented at trial does not support appellant's position that the trial court should have instructed the jury on duress or necessity. No evidence existed that appellant was threatened by Teague or that appellant's own will was overpowered. There was no evidence that Teague possessed a gun or other weapon or otherwise felt threatened by Teague. To the contrary, Teague was physically separated from appellant as he had entered the backseat of appellant's vehicle on the passenger's side, and appellant was in the driver's seat and no weapon was found in appellant's vehicle at the end of the chase. Moreover, the state introduced uncontradicted evidence that appellant initially began to exit from the SUV at the gas station but, instead, reentered it, thereby disregarding the instruction of a police officer to stop and get on the ground. The evidence does not support an inference that appellant attempted to escape in the car because he was coerced to do so by a threat of personal harm made by Teague. The trial court did not err in refusing to instruct the jury on the defense of duress.

{¶ 34} Ohio law recognizes a necessity defense where the following elements are present:

> "* * * (1) [T]he harm must be committed under the pressure of physical or natural force, rather than human force; (2) the harm sought to be avoided is greater than, or at least equal to that sought to be prevented by the law defining the offense charged; (3) the actor reasonably believes at the moment that

> his act is necessary and is designed to avoid the greater harm; (4) the actor must be without fault in bringing about the situation; and (5) the harm threatened must be imminent, leaving no alternative by which to avoid the greater harm. * * *"

*Columbus v. Spingola*, 144 Ohio App.3d 76, 83 (10th Dist.2001), quoting *State v. Prince*, 71 Ohio App.3d 694 (4th Dist.1991).

{¶ 35} No physical or natural force pressured appellant to engage in the conduct he did following the Cracker Barrel robbery, nor did any evidence exist to support the remaining elements of a necessity defense.

{¶ 36} Accordingly, the trial court did not err at all in refusing to instruct the jury on the affirmative defenses of duress and necessity as the evidence did not support either of those defenses. Thus, the court did not commit plain error. We, therefore, overrule appellant's second assignment of error.

### D. *Alleged Error in Jury Instructions—Accomplice Testimony*

{¶ 37} In his third assignment of error, appellant contends that the trial court erred in instructing the jury on complicity.

{¶ 38} R.C. 2923.03(D) provides:

> If an alleged accomplice of the defendant testifies against the defendant in a case in which the defendant is charged with complicity in the commission of or an attempt to commit an offense, an attempt to commit an offense, or an offense, *the court, when it charges the jury, shall state substantially the following:*
>
> "The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, *but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution.*
>
> It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth."

(Emphasis added.)

{¶ 39} The trial court instructed the jury in this case as follows:

> You've heard testimony from Tyson Teague, who pleaded guilty to the same robbery of the Cracker Barrel that is charged in this case. Teague claims that Mr. Ferguson was an accomplice. An "accomplice" is one who purposely or knowingly assists or joins another person in the commission of a crime or an attempted crime.
>
> * * * In evaluating the evidence from Mr. Teague, you decide what weight to give Mr. Teague's testimony having in mind all of the facts you learned in the trial.
>
> Those facts include evidence of his prior felony convictions, and any evidence of Teague's hope for leniency at his own sentencing, or in regard to his other pending charges from April 2012 which are yet to be resolved.
>
> *Testimony by someone claiming a person is an accomplice in crime should, in short, be weighed with great caution.*

(Emphasis added.) (Tr. Vol. III, 88-89.)

{¶ 40} The trial court clearly did not recite verbatim the text included in R.C. 2923.03(D). It did advise the jury that Teague's testimony should be weighed "with great caution," but it did not advise the jury that Teague's alleged complicity "may affect his credibility and make his testimony subject to grave suspicion," as the statute requires.

{¶ 41} The record reflects that appellant requested a jury instruction that "testimony of a person who you find to be an accomplice should be viewed with grave suspicion and weighed with great caution." Prior to giving the jury instructions, the trial court informed counsel that he would not instruct the jury to view Teague's testimony "with grave suspicion" but would only charge the jury to weigh Teague's testimony "with great caution." The court stated its belief that use of "the words 'grave suspicion,' puts the court's thumb on the evidence and it goes too far." (Tr. Vol. III, 12.) Defense counsel objected to the omission of the "grave suspicion" language, observing that Ohio Jury Instructions ("OJI") recommended use of both phrases, and that OJI referenced R.C. 2923.01(H) and 2923.03(D) as the basis for such an instruction.

{¶ 42} We have previously considered R.C. 2923.03(D) and observed that " 'R.C. 2923.03(D) explicitly permits substantial compliance with the accomplice testimony

instruction." *State v. Sutton*, 10th Dist. No. 06AP-708, 2007-Ohio-3792, ¶ 61, quoting *State v. Fitzgerald,* 11th Dist. No. 2003-L-084, 2004-Ohio-6173, ¶ 31. We further observed that "a trial court does not commit error solely because it does not literally comply with R.C. 2923.03(D)," and that "a trial court substantially complies with R.C. 2923.03(D) by alerting the jury that accomplice testimony should be viewed with 'grave suspicion' and 'weighed with great caution.' " *Id.* We described as "key phrases" in the instruction that the jury should view accomplice testimony with "grave suspicion" *and* weigh that testimony "with great caution." *Id.* at ¶ 62. The "legislative purpose of R.C. 2923.03(D) is to alert juries of the potentially self-serving motivation behind an accomplices' testimony in a strong and uniform manner." *State v. Woodson*, 10th Dist. No. 03AP-736, 2004-Ohio-5713, ¶ 17. "In order to implement this purpose, trial courts must comply with R.C. 2923.03(D) and 'are not in a position to ignore [the statutory] directive." *Id.,* quoting *State v. Crawford*, 10th Dist. No. 01AP-1428, 2003-Ohio-1447.

{¶ 43} In this case, the state had charged appellant with robbery by having aided and abetted Teague; i.e., it charged appellant with being Teague's accomplice. Accordingly, the provisions of R.C. 2923.03(D) relative to accomplice testimony applied, and that statute mandated that the trial court include the "grave suspicion" advisory stated in the statute. The court lacked authority to omit that phrase.

{¶ 44} We, therefore, find that the trial court erred by not substantially complying with R.C. 2923.03(D). That error, however, is not cause for summary reversal of the conviction. Rather, we find the error to be harmless pursuant to Crim.R. 52(A). Appellant's argument arguably might have had merit had the jury returned verdicts finding appellant guilty of robbery based on appellant having been Teague's accomplice. But it returned guilty verdicts only as to the counts charging appellant with failure to comply and receiving stolen property. The prosecution's evidence elicited through the testimony of other state witnesses, notably police officers involved in the chase and appellant's wife concerning the theft of her SUV, overwhelmingly supported appellant's guilt of those counts independently of Teague's testimony.

{¶ 45} Accordingly, we overrule appellant's third assignment of error.

### E. *Denial of Crim.R. 29 Motion for Acquittal*

{¶ 46} In his fourth assignment of error, appellant contends the trial court erred in denying his Crim.R. 29 motion for acquittal.

{¶ 47} A Crim.R. 29(A) motion for acquittal tests the sufficiency of the evidence. *State v. Reddy*, 10th Dist. No. 09AP-868, 2010-Ohio-3892, ¶ 12, citing *State v. Knipp*, 4th Dist. No. 06CA641, 2006-Ohio-4704, ¶ 11. In determining whether the trial court erred in denying appellant's Crim.R. 29 motion for acquittal, we apply the same standard applicable to a sufficiency-of-the-evidence review. *Id.*, citing *State v. Darrington*, 10th Dist. No. 06AP-160, 2006-Ohio-5042, ¶ 15.

{¶ 48} Our analysis is governed by well-developed law:

> Sufficiency of the evidence is a legal standard that tests whether the evidence is legally adequate to support a verdict. * * * Whether the evidence is legally sufficient to support a verdict is a question of law, not fact. * * * In determining whether the evidence is legally sufficient to support a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." * * * "A verdict will not be disturbed unless, after viewing the evidence in a light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact." * * *

(Citations omitted.) *State v. Ingram*, 10th Dist. No. 11AP-1124, 2012-Ohio-4075, ¶ 18-19.

{¶ 49} In reviewing the sufficiency of the evidence, a court must not evaluate the credibility of witnesses but, rather, must assume that the state's witnesses testified truthfully and determine if that testimony satisfies each element of the crime. *Id.*, citing *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79-80, and *State v. Bankston*, 10th Dist. No. 08AP-668, 2009-Ohio-754, ¶ 4.

{¶ 50} We turn to examination of the testimony offered by the state's witnesses to determine whether the state produced sufficient evidence to support a jury's finding of the existence of the elements of failure to comply with an order or signal of a police officer, in violation of R.C. 2921.331, and receiving stolen property, in violation of R.C. 2913.51.

{¶ 51} R.C. 2921.331 provides:

(B) No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop.

* * *

[C](5)(a) A violation of division (B) of this section is a felony of the third degree if the jury or judge as trier of fact finds any of the following by proof beyond a reasonable doubt:

* * *

(ii) The operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property.

{¶ 52} This court has recognized that a police officer makes a visible or audible signal to stop by activating his flashing lights and sirens when following a vehicle for purposes of R.C. 2921.331(B). *State v. Garrard*, 170 Ohio App.3d 487, 2007-Ohio-1244, ¶ 29 (10th Dist.). *In Garrard*, we recognized that violation of R.C. 2921.331(B) was established by proof that an individual failed to stop his vehicle after a police officer behind him engaged his lights and sirens and, instead, continued to speed through a commercial/residential area at a speed well in excess of the speed limit. That evidence, moreover, satisfied the element of "willfully" eluding a police officer.

{¶ 53} In the case before us, the state introduced evidence from Grove City police officers that mirrors that presented in *Garrard*. In contrast, the defense presented no evidence to support the conclusion that appellant did not trigger a high-speed police chase putting numerous people at risk of harm or that he was unaware that the officers were signaling him to stop.

{¶ 54} We, therefore, find that, viewing the evidence described above in a light most favorable to the prosecution, the jury could rationally have found that the state proved beyond a reasonable doubt the essential elements of failure to comply.

{¶ 55} The elements of the crime of receiving stolen property are stated in R.C. 2913.51(A):

No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that

the property has been obtained through commission of a theft offense.

{¶ 56} The law is established that, "[a]lthough receiving [stolen property] is technically not an included offense of theft, it is, under R.C. 2941.25, an 'allied offense of similar import.' An accused may be tried for both but may be convicted and sentenced for only one." *Maumee v. Geiger*, 45 Ohio St.2d 238, 244 (1976). Moreover, this court has recognized that an accused may be charged with both robbery of an automobile and receiving stolen property based on retaining that same automobile, although conviction of one of these crimes precludes later prosecution of the other. *State v. DeLong*, 70 Ohio App.3d 402 (10th Dist.1990). Where the state is able to establish by substantial proof that the theft of a vehicle was committed by the same individual charged with receiving stolen property, it follows that the individual possessed the requisite "knowledge" that the vehicle in which he was arrested had been obtained through the commission of a theft offense. *State v. Black*, 181 Ohio App.3d 821, 2009-Ohio-1629, ¶ 18 (2d Dist.).

{¶ 57} The testimony of appellant's estranged wife was sufficient to support a jury finding that appellant received her SUV through theft by taking the keys to the SUV from her purse without her permission and driving it away. " '[O]ne who commits a theft necessarily receives the property he steals * * *.' " *Id.* at ¶ 18, quoting *State v. Stevenson,* 181 Ohio App.3d 292, 2009-Ohio-901, ¶ 22 (2d Dist.). There is no evidence to suggest that appellant did not have reasonable cause to believe that he had received the SUV through commission of a theft offense.

{¶ 58} We therefore find that, viewing the evidence described above in a light most favorable to the prosecution, the jury could rationally have found that the state proved beyond a reasonable doubt the essential elements of the crime of receiving stolen property.

{¶ 59} We overrule appellant's fourth assignment of error.

**F.** *Manifest Weight of the Evidence*

{¶ 60} In his fifth assignment of error, appellant contends that his convictions were against the manifest weight of the evidence. We begin by considering the governing legal standards for a manifest-weight challenge:

"While sufficiency of the evidence is a test of adequacy regarding whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest weight of the evidence standard addresses the evidence's effect of inducing belief." * * * "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." * * * " 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " * * * This discretionary authority " 'should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " * * *

(Citations omitted.) *State v. McClendon*, 10th Dist. No. 11AP-354, 2011-Ohio-6235, ¶ 7.

{¶ 61} In light of the evidence discussed above, as well as the record in its entirety, and applying the standard stated above, we do not find that the jury clearly lost its way in resolving conflicts and assessing the credibility of witnesses and created a manifest miscarriage of justice in convicting appellant of both failure to comply and receiving stolen property. Nor do we find that the jury lost its way or created a manifest miscarriage of justice in finding appellant guilty of these offenses.

{¶ 62} We therefore overrule appellant's fifth assignment of error positing that appellant's conviction should be reversed as being against the manifest weight of the evidence.

## IV. Conclusion

{¶ 63} For the foregoing reasons, we overrule all five of appellant's assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN and CONNOR, JJ., concur.

———————————