[Cite as *State v. Sullens*, 2017-Ohio-4081.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 15AP-1159 |
| v. | : | (C.P.C. No. 15CR-1944) |
| Joseph L. Sullens, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on June 1, 2017

**On brief:** *Ron O'Brien,* Prosecuting Attorney, and *Steven L. Taylor,* for appellee.

**On brief:** *Hollern & Associates*, and *H. Tim Merkle*, for appellant.

APPEAL from the Franklin County Court of Common Pleas.

HORTON, J.

{¶ 1} Defendant-appellant, Joseph L. Sullens, appeals from his conviction in the Franklin County Court of Common Pleas, for domestic violence under R.C. 2919.25. For the reasons set forth below, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{¶ 2} Sullens was indicted on one count of domestic violence under R.C. 2919.25 on April 20, 2015. The indictment charged the domestic violence count as a third-degree felony, based on the allegation that Sullens had multiple previous convictions for domestic violence. (Apr. 20, 2015 Indictment.)

{¶ 3} After pleading not guilty, Sullens waived his right to a jury trial. (Apr. 22, 2015 Plea of Not Guilty; Nov. 2, 2015 Entry.) The trial court held a bench trial on November 3, 2015.

{¶ 4} During a pretrial conference, the prosecution moved the trial court to call the victim, Z.S., as its own witness. The defense objected, arguing that the request to have the trial court call Z.S. as a witness was an attempt by the prosecution to circumvent the rule that a party cannot impeach its own witness with a prior inconsistent statement. The prosecution responded that it was within the trial court's discretion to call Z.S. as a witness, regardless of any intent to impeach her with inconsistencies between her testimony and prior statements to the police. The trial court overruled the defense's objection and stated that it would call Z.S. as its own witness, citing its authority to do so under Evid.R. 614(A). (Nov. 3, 2015 Tr. at 5-8.)

{¶ 5} On the stand, Z.S. testified that Sullens had been convicted of domestic violence on seven occasions with her as the victim and one additional occasion with her father as the victim. (Tr. at 13-14.) She testified that on April 5, 2015, Sullens "got upset and started arguing" with her after she received a phone call from a friend wishing her a happy birthday. (Tr. at 15.) The prosecution and Z.S. had the following exchange:

Q. Then what happened?

A. I really don't remember, I really don't recall, but I think he smacked me.

Q. Where did he smack you?

A. Up side my head.

Q. The side of your head?

A. Uh-huh.

Q. Alright. Were you upset when that happened?

A. No. I just didn't want things to get out of hand. That is why I called the police.

Q. So you called the police?

A. I think. I don't remember if somebody else did. I'm not really sure.

(Tr. at 15.)

{¶ 6} The prosecution then played a recording of a 911 call in which the caller stated: "My husband beat me and I have blood (unintelligible). I need some help." (Tr. at

16.) The caller identified herself as Z.S. and Sullens as the assailant. When questioned, Z.S. stated that she recognized her voice and that she had made the call. (Tr. at 16-17.)

{¶ 7} Z.S. also testified that when the officers arrived, she "partially did and partially didn't" talk to them because she had been drinking. (Tr. at 18.) The prosecution presented Z.S. with a written statement she had made to the officers stating that Sullens had hit her face and body. The prosecution also presented Z.S. with several photographs the police had taken of her that day that showed injuries to her face, including a split lip and scratches. Z.S. testified that Sullens was not responsible for the injuries in the photographs:

Q. So you had those injuries when the police got there?

A. Yes. But they weren't caused by him.

Q. But he did hit you, right?

A. I never said that. I never said that.

Q. Didn't you say earlier today that he smacked you?

A. Uh-huh.

Q. Okay. And didn't you tell the police that he hit you?

A. Uh-huh.

Q. What is your relationship with Mr. Sullens like now?

A. We are still together.

* * *

Q. [Z.S.], just so we are clear, your testimony today is that he did strike you in the face that night in April, correct?

A. Uh-huh.

Q. Okay. You have to answer out loud.

A. Yes.

(Tr. at 21-23.)

{¶ 8} After Z.S. testified, the prosecution called two police officers who had responded to the 911 call as witnesses. One officer testified that he had taken the pictures of Z.S., and that "she was visibly shaken and upset, breathing heavily, [and] had a hard time speaking to us at first." (Tr. at 33.) The other officer testified that he had Z.S. prepare the written statement, and that she "was virtually terrified. She was scared. She was having a hard time speaking, [and was] out of breath. She appeared very frightened." (Tr. at 39.) The trial court admitted the 911 call recording and Z.S.'s written statement as prior inconsistent statements under Evid.R. 613 over the objection of Sullens' attorney, and admitted the photographs and certified court records of Sullens' previous convictions.

{¶ 9} The trial court found Sullens guilty of the charge of domestic violence under R.C. 2919.25. (Tr. at 59.) At a sentencing hearing held on December 4, 2015, the trial court imposed a sentence of 12 months. (Dec. 10, 2015 Jgmt. Entry.) Sullens appeals, asserting the following assignments of error:

> [I.] THE TRIAL COURT IMPROPERLY ADMITTED AND THEN RELIED UPON IMPEACHMENT EVIDENCE AS SUBSTANTIVE EVIDENCE AGAINST THE APPELLANT AND AS A RESULT DENIED THE APPELLANT HIS RIGHT TO A FAIR TRIAL AND DUE PROCESS AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
>
> [II.] THE STATE FAILED TO PRODUCE SUFFICIENT EVIDENCE TO SUPPORT A CONVICTION AND/OR THE FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE FOR THE VERDICT OF THE TRIAL COURT FINDING THE APPELLANT GUILTY OF FELONY DOMESTIC VIOLENCE AND FINDING THE APPELLANT GUILTY OF DOMESTIC VIOLENCE.

## II. FIRST ASSIGNMENT OF ERROR

{¶ 10} In his first assignment of error, Sullens argues that the trial court improperly admitted the 911 call and police statement as impeachment evidence against him, and relied upon that evidence as substantive evidence against him, in violation of his due process rights.

{¶ 11} We must first address the applicable standard of review. "The trial court has broad discretion in the admission of evidence, and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, an appellate court

should not disturb the decision of the trial court." *State v. Issa*, 93 Ohio St.3d 49, 64 (2001). A trial court abuses its discretion if its evidentiary ruling is "unreasonable, arbitrary, or unconscionable." *State v. Connally*, 10th Dist. No. 16AP-53, 2016-Ohio-7573, ¶ 23, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 12} The State argues that plain error review should apply because Sullens did not object to the admission of the 911 call or the police statement during Z.S.'s testimony. (Appellee's Brief at 6.)

{¶ 13} To preserve error for appeal, a party must make a "timely objection" to an evidentiary ruling. Evid.R. 103(A)(1). Here, the record reflects that Sullens' attorney objected to the trial court's decision to admit the 911 call and the statement Z.S. made to police at the time the State introduced the exhibits into evidence. (Nov. 3, 2015 Tr. at 40 & 43.) The trial court admitted the statement "[o]ver the Defense objection * * * for the purpose of impeaching the witness" and admitted the 911 call recording "for the same reasons" immediately after Sullens' attorney objected again. Furthermore, defense counsel had also objected to Z.S.'s testimony before the trial court called her as a witness, anticipating that the State would attempt to use the 911 call recording and the statement as impeachment evidence. (Tr. at 5-8.) Under these circumstances, Sullens' attorney was not required to object during Z.S.'s testimony. Multiple objections contemporaneous with the trial court's decision to admit the evidence satisfy the "timely objection" requirement of Evid.R. 103. Accordingly, we reject the State's argument that plain error review should apply, and we will review the first assignment of error under an abuse of discretion standard.

{¶ 14} Evid.R. 613 allows the admission of a witness's prior inconsistent statement if two conditions are met. First, the examiner must lay a proper foundation before the admission of the prior inconsistent statement. Evid.R. 613(B); *see also State v. Ferguson*, 10th Dist. No. 12AP-1003, 2013-Ohio-4798, ¶ 19 (observing that the rule "is explicit that extrinsic evidence is admissible to impeach credibility only if a foundation is laid"). To lay a proper foundation, the witness must be "afforded a prior opportunity to explain or deny the statement and the opposite party is afforded an opportunity to interrogate the witness on the statement or the interests of justice otherwise require." Evid.R. 613(B)(1). "If a witness denies making a prior inconsistent statement, a proper foundation has been laid, and if, in addition, the prior inconsistent statement does not relate to a collateral matter,

extrinsic evidence is admissible." *Ferguson* at ¶ 15, citing *State v. Kulasa*, 10th Dist. No. 11AP-826, 2012-Ohio-6021, ¶ 19. However, "[i]f a witness admits having made the contradictory statements, then extrinsic evidence is not admissible." *Kulasa* at ¶ 12, citing *In re M.E.G.*, 10th Dist. No. 06AP-1256, 2007-Ohio-4308, ¶ 37.

{¶ 15} Second, the "subject matter" of the prior inconsistent statement must concern:

> (a) A fact that is of consequence to the determination of the action other than the credibility of a witness;
>
> (b) A fact that may be shown by extrinsic evidence under Evid.R. 608(A), 609, 616(A), or 616(B);
>
> (c) A fact that may be shown by extrinsic evidence under the common law of impeachment if not in conflict with the Rules of Evidence.

Evid.R. 613(B)(2).

{¶ 16} Here, the State failed to lay a proper foundation for the introduction of impeachment evidence. The impeachment evidence the State sought to introduce—the 911 recording and Z.S.'s written statement to police—were not inconsistent with her testimony. The State sought to introduce this evidence to counter a denial by Z.S. that Sullens had hit her. However, in her testimony, Z.S. denied no such thing. Although she initially appeared to be unsure of what had happened after they started arguing, Z.S. finished her thought by confirming that Sullens had hit her "up side [her] head." (Tr. at 15.) After Z.S. made this statement, the prosecutor played the 911 recording. (Tr. at 15-16.) Instead of contradicting what she had said, Z.S.'s statement on the recording that Sullens had beat her confirmed her testimonial statement. Because the 911 recording was consistent with Z.S.'s testimony, it failed to even qualify as impeachment evidence.

{¶ 17} Similarly, Z.S.'s written statement to police failed the basic definition of impeachment evidence: it must contradict a witness's statement. Immediately after playing the 911 recording, the prosecutor asked several questions about its contents. Z.S. *confirmed* that she had said that Sullens had "assaulted" her on the recording. (Tr. at 17.)

{¶ 18} Z.S. did deny having made a written statement to police before the prosecutor handed her the statement in which she had reported that Sullens had hit her. (Tr. at 18.) However, that denial was irrelevant, because impeachment evidence must

contradict a statement regarding a "fact that [was] of consequence to the determination of the action." Evid.R. 613(B)(2)(a). Here, the State was not attempting to impeach Z.S. for asserting that she had not made a statement to police. As the prosecutor asserted to the trial court when arguing for the admission of the impeachment evidence:

> Again, Your Honor, **we have a statement that goes right to the heart of this matter, whether or not [Z.S.] was assaulted**. She was given the opportunity to review the statement and confirm or deny it. Defense counsel was afforded the opportunity to cross examine her as to the content of that statement. And **this was used to impeach** [Z.S.] **with regard to her testimony** today and **how it differed from the content of her written statement**.

(Emphasis added.) (Tr. at 41-42.)

{¶ 19} However, at the moment the prosecutor confronted Z.S. with her written statement to the police, she had not denied that Sullens had assaulted her during her testimony. Contrary to the prosecution's assertion, neither the 911 recording nor Z.S.'s statement to police contradicted or "differed from" her testimony as to whether Sullens caused her physical harm.[1]

{¶ 20} Furthermore, Z.S. admitted that she made the statements after the prosecutor confronted her with them. (Tr. at 17-18.) Such an admission renders the proffered impeachment evidence inadmissible. *Kulasa* at ¶ 12.

{¶ 21} On the facts of this case, the prior statements which Z.S. admitted to making and were consistent with her testimony were outside the realm of evidence admissible under Evid.R. 613. For this reason, the trial court erred by admitting the 911 recording and Z.S.'s written statement to police as evidence of prior inconsistent statements.

{¶ 22} Nevertheless, the admission of this evidence was harmless and, therefore, not cause for reversal. Under Crim.R. 52(A), "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." The error in question must have been prejudicial by affecting the outcome of the proceedings. *State v. Fisher*, 99 Ohio St.3d 127, 2003-Ohio-2761, ¶ 7.

---

[1] Z.S.'s only denials that were material to the prosecution's case concerned the origin of her injuries that the police had photographed, as she denied that Sullens had caused them. However, the prosecution had already presented the 911 recording and Z.S.'s statement to the police before showing her the photographs. They were admitted without objection and not offered as impeachment evidence. (Tr. at 19-20.)

{¶ 23} Sullens argues that the trial court improperly relied on the 911 call recording and Z.S.'s written statement as substantive evidence. Although he asserts that the admission of this evidence violated his due process right to a fair trial, there was sufficient evidence to support the trial court's guilty verdict without considering either the 911 call or the written statement as substantive evidence. As previously discussed, Z.S. testified that Sullens had assaulted her. When her testimony is considered along with that of the officers and the photographic evidence of the injuries, which was admitted without objection, more than enough evidence was put before the trial court to support its ultimate finding that Sullens "knowingly cause[d] or attempt[ed] to cause physical harm to a family or household member," in violation of R.C. 2919.25(A). The first assignment of error is overruled.

## III. SECOND ASSIGNMENT OF ERROR

{¶ 24} In his second assignment of error, Sullens argues that there was insufficient evidence to support his conviction, and that the conviction was against the manifest weight of the evidence.

{¶ 25} Two different legal standards apply to the legal sufficiency of the evidence and the manifest weight of the evidence, the issues raised by Sullens' second assignment of error. *See State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), paragraph two of the syllabus ("The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different."). Whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Jennings*, 10th Dist. No. 09AP-70, 2009-Ohio-6840, ¶ 37, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "Sufficiency is a test of adequacy." *Id.*, citing *Thompkins*. "The standard when testing the sufficiency of the evidence 'is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Beverly*, 143 Ohio St.3d 258, 2015-Ohio-219, ¶ 15, quoting *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, ¶ 70. A reviewing court "will not disturb a verdict on appeal on sufficiency grounds unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.' " *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, ¶ 94, quoting *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997).

{¶ 26} The manifest weight of the evidence analysis, on the other hand, requires the appellate court to consider the state's evidence as an additional, or "thirteenth juror." *Thompkins* at 387. After " 'reviewing the entire record,' " the appellate court " 'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Id.*, quoting *State v. Martin*, 20 Ohio App. 3d 172 (1st Dist.1983). " 'The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.*, quoting *Martin.*

{¶ 27} According to Sullens, the State failed to prove his previous domestic violence convictions beyond a reasonable doubt, as is necessary to elevate the conviction from a misdemeanor to a felony. Under R.C. 2919.25(D)(4), "[i]f the offender previously has pleaded guilty to or been convicted of two or more offenses of domestic violence," a subsequent violation is "a felony of the third degree." Specifically, Sullens argues that the court records of the previous convictions that had been admitted as evidence were insufficient to identify him as the defendant named in those convictions where the prosecution failed to show the records to Z.S. when questioning her as to whether Sullens had committed the offenses: "Simply rattling off dates to a court witness is not enough to tie the appellant to those convictions." (Appellant's Brief at 22.)

{¶ 28} We disagree, particularly when the "court witness" was the victim of domestic violence in seven of the convictions that the prosecution asked about, and her father was the victim in one other conviction. R.C. 2945.75(B)(1) states that "to prove a prior conviction, a certified copy of the entry of judgment in such prior conviction together with evidence sufficient to identify the defendant named in the entry as the offender in the case at bar, is sufficient to prove such prior conviction." Here, the prosecution introduced certified copies of eight previous convictions and the victim in seven of those convictions testified before the trial court that they had occurred, and that Sullens was the perpetrator. We can think of no evidence more probative of the defendant's identity in a domestic violence case than a victim's sworn testimony identifying him as the assailant in the previous convictions. We, therefore, reject Sullens' contention that the prosecution brought "insufficient evidence of identity" to support the elevation of his conviction under R.C. 2919.25 to a felony. (Appellant's Brief at 22.)

{¶ 29} Sullens' final argument asserts that the verdict was against the manifest weight of the evidence because "no credible evidence of physical harm or an attempt to cause physical harm exists," as the trial court relied on the improperly admitted impeachment evidence. (Appellant's Brief at 24-25.) As we concluded in our discussion of the first assignment of error, the State introduced ample evidence to support the trial court's determination that Sullens committed domestic violence under R.C. 2919.25, even without considering the erroneously admitted evidence. The second assignment of error is overruled.

{¶ 30} Having overruled Sullens' two assignments of error, the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

DORRIAN and BRUNNER, JJ., concur.

———————————